UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

GRAHAM-FIELD, et al.,
Plaintiffs,
vs.                                        CIVIL NO. 98-1306 (DRD)
TUFFCARE, INCORPORATED,
Defendant.

## ORDER

Before the Court is Plaintiffs' Motion for Summary Judgment on the Record on Plaintiffs Motions for Partial Summary Judgment and a Declaratory Judgment (Docket #67). For the reasons discussed below, Plaintiffs' Motion is **DENIED**. Additionally before the Court is Defendant's Urgent Motion for Reconsideration of August 16, 2001 Order (Docket #104). We first address the Motion for Summary Judgment.

The standard for summary judgment has been revisited by the First Circuit Court of Appeals on several occasions. Serapion v. Martinez, 119 F.3d 982, 986 (1st Cir.1997) (citing McCarthy v. Northwest Airlines, Inc., 56 F.3d 313, 315 (1st Cir.1995) collecting cases). "Once a properly documented motion has engaged the gears of Rule 56, the party to whom the motion is directed can shut down the machinery only by showing that a trial worthy issue exists." Navarro v. Pfizer Corporation, ___ F.3d ___, ___ (1st Cir, August 20, 2001, Case # 00-1856). A court may grant summary judgment only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R .CIV. P. 56(c). To defeat a motion for summary judgment, the resisting party must show the existence of "a trial worthy issue as to some material facts." Cortes-Irizarry, 111 F.3d at 187. A fact is deemed "material" if the same "potentially affect[s] the suit's determination." Garside v. Osco Drug Inc., 895 F.2d 46, 48 (1st Cir. 1990). "An issue concerning such a fact is "genuine" if a reasonable fact finder, examining the evidence and drawing all reasonable inferences helpful to the party resisting summary judgment, could resolve the dispute in that party's favor." Cortes-Irizarry, 111 F.3d at 187. The Navarro Court put it this way:

> Not every factual dispute is sufficient to thwart summary judgment; the contested fact must be "material" and the dispute over it must be "genuine". In this regard, "material" means that a contested fact has the potential to change the outcome of the suit under the governing law if the dispute over it is resolved favorably to the non-movant. By like token, "genuine" means that the evidence about the fact is such that a reasonable jury could resolve the point in favor of the nonmoving party.

Navarro, *supra*.

Material and genuine actual disputes which go to motive and / or intent are seldom ripe for

summary judgment. "Summary judgment procedures should be used sparingly ... where the issues of motive and intent play leading roles.... It is only when the witnesses are present and subject to cross-examination that their credibility and the weight to be given their testimony can be appraised. Trial by affidavit is no substitute for trial by jury which so long has been the hallmark of 'even handed justice.'" Poller v. Columbia Broad. Sys., 368 U.S. 470, 473, 82 S.Ct. 486, 491 (1962); cf Pullman-Standard v. Swint, 456 U.S. 273, 288-90, 102 S.Ct. 1781, 1790-1791 (1982) (discriminatory intent is a factual matter for the trier of fact); see also William Coll. v. P.B. Diagnostic Sys., Inc., 50 F.3d 1115, 1121 (1st Cir. 1995); Oliver v. Digital Equip. Corp., 846 F.2d 103, 107 (1st Cir. 1988); Lipsett v. University of P.R., 864 F.2d at 895.

The court is required to examine the record "drawing all reasonable inferences helpful to the party resisting summary judgment," Cortes-Irizarry v. Corporacion Insular, 111 F.3d 184, 187 (1st Cir. 1997). There is "no room for credibility determinations, no room for the measured weighing of conflicting evidence such as the trial process entails, no room for the judge to superimpose his own ideas of probability and likelihood . . . ." Greenburg v. Puerto Rico Maritime Shipping Auth., 835 F.2d 932, 936 (1st Cir. 1987). The facts must be examined under the above criteria because on a potential appeal the appellate court examines "the undisputed facts in the light most congenial to the appellants and adopts their version of any contested facts which are material to our consideration of the issues." Vega-Rodriguez v. Puerto Rico Tel. Co., 110 F.3d 174, 178 (1st Cir. 1997).

This case does not warrant *brevis* disposition. The Court has identified several key aspects of this case upon which an ultimate decision would likely lie. We turn to each.

First is whether the original exclusivity agreement under Law 75, 10 P.R. Laws Ann. § 378, *et. seq.*, between Tuffcare and VC Medical Distributors was limited to wheelchairs. The Defendant says it was; the Plaintiffs say it was not. As a considerable amount of Plaintiffs' alleged damages, and subsequent legal arguments, depends upon this answer, it is absolutely material to our ultimate decision. From a review of the supporting documents submitted by both parties, it could be understood that VC Medical Distributors never purchased beds from Tuffcare, and in fact primarily purchased wheelchairs exclusively, and canes and walkers non-exclusively. This would be supported by VC Medical Distributors purchasing beds, canes, walkers and other products from their future owner, the Plaintiffs in this case. Such purchases would surely be contrary to the exclusivity agreement argued as binding by the Plaintiffs, because Plaintiffs (Graham Field) and Defendant (Tuffcare) distribute competing products (the record indicates Tuffcare distributes canes, wheelchairs and beds, among other items, and Graham Field distributes canes, wheelchairs and beds, among other items).

The exclusivity agreement does state "The Distributor agreed to promote and sell wheelchairs and related products only for the Manufacturer." See Exclusive Sales Agreement, paragraph 3. Can "and related products" mean products related to medicine, or just wheelchairs? This is exactly what the Greenburg case referred to when stating there was "no room for credibility determinations, no room for the measured weighing of conflicting evidence such as the trial process entails, no room for the judge to superimpose his own ideas of probability and likelihood . . . ." Greenburg, *supra*.

Further this matter depends on the "intent" of the parties which as to this contract issue is not subject to summary disposition. William Coll., *supra*. This critical question must be decided by the ultimate fact finder. Related to this question is whether or not Tuffcare had made available to Plaintiffs all of its products for sale and resale. If for argument sake a Law 75 relationship existed, it would only have existed as to the products which Plaintiffs were originally entitled to buy. The scope of the original exclusivity agreement, and the factual aspects of the ongoing business relationship in terms of products promoted and purchased, are material factual determinations currently disputed, which a reasonable jury could resolve in Defendant's favor.

Second, after the sale of VC Medical Distributors to Plaintiffs, the assignment approval letter from Tuffcare included a provision of dealing in "good will". The Court would tend to agree that the factual scenario of two heavy-duty competitors in bed together would make for very strange bed-fellows, and that "good will" amongst them, particularly given the text of numerous Memos cited by Defendants regarding Plaintiffs' senior officers stressing only Plaintiffs' products are to be promoted, would be difficult. By its very terms, "good will" is plagued with issues of motive and intent. Whether good will existed, and its importance to the overall scheme of the case, is an inappropriate question for summary judgment. Poller, *supra*.

Plaintiffs' claim products they ordered were at higher prices than those purchased by other companies in Puerto Rico; more specifically, higher than that paid by Medex. Defendant has offered numerous factually related reasons for this, including Medex contracting for much larger orders, Plaintiffs being given the same opportunities for discounts should they contract for orders similar in size to Medex, and Plaintiffs' poor payment history. Similarly, Plaintiffs claim the payment terms they were provided were different than those of Medex. Defendant counters that Plaintiffs' were granted the same terms they provide to all their clients who refuse to timely pay their bills. Here we enter into possible anti-trust issues, and an entire line of caselaw under the Robinson-Patman Amendment to the Clayton Act. Primary issues here would be cost-justification of any price differentials, and / or good-faith attempts to meet equally lower prices of competitors. *See generally* FTC v. Morton Salt, 344 US 37 (1948); Falls City Industries v. Vanco Beverage, Inc., 460 US 428 (1983); Monahan's Marine, Inc. v. Boston Whaler, Inc., 866 F.2d 525 (1st Cir. 1989). Similar to the subjectiveness of "good will", the terms "cost *justification*" and "good-faith attempts" are plagued with facts that are not even on the record.

Finally, Plaintiffs complain of corporate staff raiding- also a potential anti-trust issue. Hilda Salgado worked for VC Medical for six years, and stayed with the Plaintiffs once the assets of VC Medical were purchased. She in fact was a signature on the original exclusive distribution agreement between VC Medical and the Defendant as an "Owner" of the former. Plaintiffs claim she "retired" in early 1998, and while she was still receiving accumulated vacation pay, she accepted a position with the Defendant. Defendant admits she was offered a position as General Manager of Medex on February 2, 1998. According to both parties Edwin Morales, José Santos and Juan Gómez were all working for the Plaintiffs in January of 1998, and Medex in February of 1998. The dates of departure from Plaintiffs' employ and arrival into Medex's arms are alarmingly close to each other. The reasons for the proximity of dates, and the relationship between Medex and the

Defendant, are contested facts with the potential to change the dispute's outcome if resolved in favor of the Defendant. There are further issues of motive and intent which must be reviewed as to the hiring of these persons by the Defendant.

We now turn to Defendant's Urgent Motion for Reconsideration of August 16, 2001 Order. Defendant refers the Court to its March 14, 2001 Order (Docket #91) wherein the Plaintiff was instructed to provide "verified and authenticated documentation demonstrating that the United States Bankruptcy Court for the District of Delaware or the debtor-in-possession has specifically authorized the continued prosecution of the above captioned civil case." On August 8, 2001, Plaintiff submitted "Plaintiff's Submission of Documentary Evidence in Compliance with Order to Show Cause Dated March 14, 2001", wherein Plaintiff's counsel indicated he was complying with the Court's Order. Defendant has properly pointed out to the Court that in fact the Plaintiff has not complied with our March 14 Order. Plaintiff has submitted documentary evidence that Plaintiff's counsel may act as Puerto Rico legal counsel for debtor-Graham Field, Inc.; Plaintiff has not submitted verified and authenticated documentation demonstrating that the United States Bankruptcy Court for the District of Delaware or the debtor-in-possession has specifically authorized the continued prosecution of the above captioned civil case, as originally required.

Plaintiff will file the proper required documentation by **September 17, 2001, at 5:00 PM**. This case will be dismissed without prejudice for failure to comply with this extremely simple Order. ABSOLUTELY NO EXTENSIONS OF TIME SHALL BE CONSIDERED. If Plaintiff is able to timely provide the required documentation, a Settlement Conference has been set for Monday, October 1, 2001, at 5:30 PM. Barring settlement, the Parties are to be fully prepared for trial in early November (more definite dates will be established during the Settlement Conference).

IT IS SO ORDERED.

Date: August 2*Y*, 2001

P:\PeachOrders\98-1306 Sum Jdgt Den.wpd

*[signature]*

**DANIEL R. DOMINGUEZ**
**U.S. DISTRICT JUDGE**