THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| GRAHAM - FIELD, INC., et al.<br><br>Plaintiffs<br><br>            Vs<br><br>E-1 Enterprises, Inc., et. al.,<br><br>Defendant | CIVIL NO. 98-1306 (DRD)<br>CIVIL ACTION |

**STATEMENT OF MATERIAL AND UNCONTESTED FACTS**

TO THE HONORABLE COURT:

COMES NOW defendant E 1 Enterprises, Inc. ("E1"), represented by the undersigned attorney, and most respectfully STATES, ALLEGES and PRAYS:

1. At all times relevant to the complaint, Plaintiff Graham Field and its wholly owned subsidiaries (including co plaintiff Graham Field Express) manufacture and distribute medical, surgical and a broad range of other health care products into the home health care and medical & surgical markets through a vast dealer network in North America.[1] Plaintiffs marketed approximately 45,000 products under its own brand names and under supplier's names.[2]

2. As of December 31, 1997 plaintiffs reported to the Securities Exchange Commission assets of $547,118,000.[3] Net revenue was $263,143,000.[4] In comparison, defendant's sales were approximately $20 million.[5]

3. At all times relevant to the complaint plaintiffs products competed with defendant Tuffcare.[6]

Graham Field, Inc., et. al., v. E 1 Enterprises Inc., et. al., 98-1306 (DRD)    Statement of Uncontested Facts

### (A) *The VC Agreement was limited to wheelchairs*.

4. In October 1990 defendant Tuffcare entered into a distribution agreement ("VC Agreement") with VC Medical Distributor ("VC Medical").[7] The VC Agreement was signed by three persons. Mr. Calvin Chang representing Tuffcare and Mr. Vicente Guzman and Ms. Hilda Salgado representing VC Medical.[8]

5. Mr. Guzman first came into contact with Tuffcare because he was "looking for a company that would manufacture or ... sell **wheelchairs**."[9] [Emphasis added.] He was "just looking for wheelchairs."[10] Mr. Guzman and Tuffcare's Calvin Chang did not "talk about anything else."[11]

6. The VC Agreement states, in part, that the "Distributor (VC Medical) agreed to promote and sell wheelchairs and related products only for the Manufacturer (Tuffcare)."[12] Related products means wheelchairs accessories and parts.[13] The VC Agreement limits its scope to promoting and selling wheelchairs.[14]

7. In the preliminary injunction hearing held on April 7, 1998, Mr. Vicente Guzmán testified under oath as to the nature of the VC Agreement.[15] **Mr. Guzmán explained that the exclusivity conferred by the VC Agreement was limited to wheelchairs.** He testified that "V.C. can only sell Tuffcare wheelchairs at the same time, Tuffcare would sell only to V.C."[16] That meant that "VC Medical did not sell competing wheelchairs, and Tuffcare did not market these same products through any other

Graham Field, Inc., et. al., v. E 1 Enterprises Inc., et. al., 98-1306 (DRD)      Statement of Uncontested Facts

company in Puerto Rico."[17]  It was of a "dual exclusive nature."[18]

8. Mr. Guzman first came into contact with Tuffcare because he was "looking for a company that would manufacture or ... sell **wheelchairs**."[19] [Emphasis added.] He was "just looking for wheelchairs."[20]  Mr. Guzman and Tuffcare's Calvin Chang did not "talk about anything else."[21]  Thus, the distribution by V.C. Medical of additional products manufactured by Tuffcare (i.e. beds) was not even discussed by the principal signatories of the VC Agreement.[22]

9. Ms. Hilda Salgado, then VC's administrator, also stated in her deposition that pursuant to the VC Agreement, VC was the exclusive distributor for Puerto Rico of Tuffcare's "wheelchairs."[23]  She similarly explained the nature on the VC Agreement in her March 20, 2001 sworn statement.  In it, she stated under oath that the "exclusivity was **only** for the distribution of **wheelchairs**.  The dual exclusivity agreement was that Tuffcare would only sell to VC Medical the product line of wheelchairs and VC would not buy wheelchairs from any other manufacturer.  VC also purchased from Tuffcare canes and walkers, and related products on a **non-exclusive basis**."[24] [Emphasis in the original.]

10. Lastly, we turn to the third signatory of the VC Agreement; Mr. Calvin Chang. In his April 14, 2000 deposition he testified under oath as to the nature of the VC Agreement:  VC Medical would only buy wheelchairs from Tuffcare, and Tuffcare

Graham Field, Inc., et. al., v. E 1 Enterprises Inc., et. al., 98-1306 (DRD)                    Statement of Uncontested Facts

would only sell its wheelchairs in Puerto Rico through VC Medical.[25] This exclusiveness "didn't relate to other product[s] ... only to wheelchairs."[26] In his March 20, 2001 sworn statement he also explained that the "exclusivity was only for the wheelchairs. The dual exclusivity agreement was that Tuffcare would only sell to VC Medical the product line of wheelchairs and VC Medical would not buy wheelchairs from any other manufacturer."[27] As to VC Medical's purchases of other products (i.e. beds), Mr. Calvin Chang explained that "VC Medical purchased beds, and other products from other manufacturers."[28] What was important to Tuffcare is that its distributor (in this case wheelchairs) did not carry competing products.[29]

11. In his sworn statement he reiterated that "VC Medical purchased and promoted beds from other manufacturers and <u>never</u> bought beds from Tuffcare."[30] [Emphasis added.]

12. Plaintiffs' own Sara Figueroa was deposed on May 5, 2000.[31] Ms. Figueroa was the director of Graham Field Express in Puerto Rico.[32] When she was asked what was the "nature ... of that exclusivity contract" she responded as follows:

A   That only we could sell the products.

Q   All the products?

A   **At that time it was the wheelchairs**.[33]

13. She corroborated that plaintiff Graham Field sold beds to VC Medical but **did not sell any wheelchairs to VC Medical**.[34] Sara Figueroa explained that Graham Field

Graham Field, Inc., et. al., v. E 1 Enterprises Inc., et. al., 98-1306 (DRD)            Statement of Uncontested Facts

could not sell any wheelchairs to VC Medical because it had an "exclusivity commitment to sell wheelchairs only from Tuffcare."[35]

14. **VC Medical never purchased beds from Tuffcare**.[36] Not even on a non exclusive basis. Mr. Vicente Guzman, then VC Medical's president, stated in his sworn statement that "VC Medical never sold Tuffcare's beds."[37] On the contrary, VC Medical bought its beds from plaintiff Graham Field.[38] At the time VC Medical was operating, Tuffcare did not even have beds available for sale.[39]

15. Hilda Salgado's also stated under oath in her deposition that VC Medical "never received beds from Tuffcare."[40] In her sworn statement she further explained that VC Medical only "purchased and promoted beds from other manufacturers, including but not limited to Plaintiff Graham Field, Inc."[41]

*(B) VC Medical's sale of assets to Plaintiff Graham Field Express*

16. In 1996 plaintiff Graham Field entered into negotiations with VC Medical to purchase all of VC's assets and set up its own distributor in Puerto Rico. However, in order for the sale to take place, plaintiff Graham Filed demanded from VC Medical that it renegotiate the VC Agreement.[42] The reason was that the VC Agreement, as it stood, would prevent Graham Field from introducing its competing Celtylite and Everest & Jennings wheelchairs.[43] Graham Field was "afraid that it could be a ... problem in the

future with introducing these products (wheelchairs) in the island."[44]

17. Mr. Guzman was told by Mr. Richard Kolodny, plaintiffs' legal counsel, that the VC Agreement could not remain in place as it would bar Graham Field from introducing its competing products on the island.[45]

18. Towards that end, Tuffcare and VC Medical **terminated** the VC Agreement by letter dated August 13, 1996.[46] The letter specifically stated that they thereby "terminate[d] the Exclusive Sales Agreement between VC Medical Distributors and Tuffcare signed in October 1990. Both company (*sic.*) will continue to do business at goodwill." That is, "Tuffcare agreed to sell the same products as before, **but not on an exclusive basis**."[47] [Emphasis added.] Therefore, Tuffcare agreed to continue selling its products to VC Medical on a non exclusive basis ("**the non exclusive arrangement**"[48]).

19. **At the time Mr. Guzman sold his corporation to GFE, there was no exclusive agreement of sales between VC and Tuffcare**. The VC Agreement was terminated because Graham Field wanted to sell competing wheelchairs in Puerto Rico.[49]

20. In response to VC Medical's petition,[50] on August 27, 1996 Tuffcare consented to the assignment of its non exclusive *arrangement* with VC Medical to GFE upon the closing of the sale of assets, pursuant to all the terms and conditions of the original agreement (net 10 days, minimum purchases of wheelchairs).[51] In its August 27, 1996

Graham Field, Inc., et. al., v. E 1 Enterprises Inc., et. al., 98-1306 (DRD)          Statement of Uncontested Facts

letter Tuffcare specifically confirmed "that the Exclusive Sales Agreement is no longer in effect, and both company (*sic.*) will continue to do business at goodwill."

21. In his deposition Mr. Guzman described this <u>new</u> relationship as an "open relationship." GFE could continue to buy from Tuffcare on a non exclusive basis while at the same time GFE could sell its own competing products.[52]

22. In November 1997 Graham Field purchased the wheelchair manufacturer Everest & Jennings.[53] [54] Before Graham Field purchased Everest & Jennings, Tuffcare's wheelchair price was lower that what Mr. Guzman could otherwise get.[55] Once GFE had Everest & Jennings wheelchairs available for sale, he was going to start using them and stop buying Tuffcare wheelchairs.[56] After Tuffcare found out about Graham Field's purchase of Everest & Jennings, and its competing line of wheelchairs, it decided to set up MedEx in Puerto Rico.[57]

***(C) Plaintiffs' conflict of interest and strategy to drive Tuffcare out of the Puerto Rico market.***

23. Mr. Vicente Guzman became the president of plaintiff GFE after the asset sale. Mr. Vicente Guzman, as president of GFE, began ordering the same products from Tuffcare that he had purchased when he was the owner of VC Medical on a non exclusive basis.[58] However, after the Everest & Jennings purchase, Mr. Guzman was

Graham Field, Inc., et. al., v. E 1 Enterprises Inc., et. al., 98-1306 (DRD)　　　　　　　　　　　　　Statement of Uncontested Facts

ordered by plaintiffs' legal counsel, Mr. Richard Kolodny, and by plaintiffs' president, Irwin Selinger, to decrease GFE's "purchases of Tuffcare products until a short transition brought an immersion of Graham Field products into the Puerto Rico market."[59] At that point, all of Tuffcare purchases would cease.[60]

24. GFE kept purchasing Tuffcare products in a transition period, and only as a back up,[61] whereupon GFE bought less and less from Tuffcare for three main reasons:[62]

　　a.　　Provide enough competition free time while GFE introduced into the Puerto Rico market competing lines from Graham Field, such as the Everest & Jennings wheelchairs;[63]

　　b.　　Convince Tuffcare that it did not need to establish a direct distribution in Puerto Rico of its products;[64]

　　c.　　Need to supply with other manufacturer's products due to Graham Field's inadequacy in filling GFE's orders completely and on time.[1], [65]

---

[1]See Exhibit 14. In the memorandum Vicente Guzman wrote to Irwin Selinger dated December 3, 1997, Guzman stated the following:

> As I mentioned to you before **we are decreasing our orders** in the regular wheelchairs. **Now, we are changing this to Everest & Jennings products** ... We went out of stock with the Everest & Jennings and **we can get Tuffcare's products faster** because they come from Florida and Everest & Jennings products come from Missouri. So by the time Everest & Jennings Wheelchairs are in (*sic.*) the way from Missouri we will have a wheelchair available in case one of our special customers order that specific item.
> ...
> The quad canes: everytime (*sic.*) we place an order of quad we never receive the quantities that we need. We ordered the GF 5986-4 at $28.20cs; they don't have

Graham Field, Inc., et. al., v. E 1 Enterprises Inc., et. al., 98-1306 (DRD)   Statement of Uncontested Facts

25. On several occasions Tuffcare's Calvin Chang expressed his concern to Mr. Guzman of how GFE was going to "keep on selling [Tuffcare] products as the first product of the company if the company manufactured Everest & Jennings [wheelchairs]. And it was understood that Graham Field wanted to market Everest and Jennings."[66] *(i.e. Plaintiffs' conflict of interest.)* At that time, Mr. Guzman was devoting time and effort in selling products that competed with Tuffcare.[67]

26. After the asset sale, Calvin Chang also complained to Ms. Salgado that GFE was not buying enough Tuffcare products and was late paying their invoices.[68] When Ms. Salgado told Mr. Guzman about Tuffcare's complaints, Mr. Guzman stated that **GFE could not buy anymore of Tuffcare's beds or wheelchairs because Graham Field had its own factories** (for competing products).[69]

27. Mr. Guzman was <u>chastised</u> on several occasions by Mr. Irwin Selinger[70] (Graham

---

enough and they sent me a substitute, the GF5796-4 at $32.28cs.
...
In Tuffcare's containers we have space on top of the chairs. Because of the situation that we are having with GF's quad canes I decided to fill the empty space with 24 Tuffcare's quad canes with no special freight charges, **just to have a quad cane available in our warehouse**. <u>**I don't have any special interest in Tuffcare's products. I'm just making the products available. For these cases, if you have another vendor that I can use instead of Tuffcare let me know**</u>.
...
**The <u>only reason</u> that I use Tuffcare is because it is the other option that I have to have products available**. If I have the availability of the products when I order, **I will not have any reason to order from anybody**. <u>I don't consider this a poor business decision</u>. We are just thinking of the availability of the products to our customers. [Emphasis added.]

Graham Field, Inc., et. al., v. E 1 Enterprises Inc., et. al., 98-1306 (DRD)        Statement of Uncontested Facts

Field's president) and Mr. Richard Kolodny (Graham Field's general counsel) for buying Tuffcare products.

28. In July 16, 1997, Mr. Irwin Selinger wrote a memo to Mr. Guzman wherein he stated that "there is no reason to buy Tuffcare Wheelchairs when we own E & J [Everest & Jennings] ... Please make sure that your entire staff abides by this memo."[71] Mr. Guzman understood this as an instruction to stop buying all wheelchairs from Tuffcare.[72]

29. As evidenced by a letter from Vicente Guzman to GF's Peter Wincour, dated May 12, 1997, the fact is that GFE was at this time aggressively promoting the competing Metro wheelchair, manufactured by GF, with the goal: "Take business no matter what ... For this we will have to math (*sic.*) our competitor's prices."[73]

30. In his deposition, Vicente Guzman also testified about his relationship with Mr. Selinger. Mr. Guzman testified that Mr. Selinger ordered him to stop buying Tuffcare products because Graham Field had competing lines that he was instead supposed to sell.[74]

31. Plaintiffs never intended to be Tuffcare's customer: in the enclosed 9/23/97 memo (*See*: *Exhibit 15*.) from Vicente Guzman to Irwin Selinger, Mr. Guzman summarized their strategy:

> When GF acquired VC Medical as part of the recquirements [*sic.*] to complete the transaction **we sent a letter to Tuffcare cancelling the**

Graham Field, Inc., et. al., v. E 1 Enterprises Inc., et. al., 98-1306 (DRD)                                    Statement of Uncontested Facts

> **exclusive distributor agreement between Tuffcare and VC Medical**. ... The only way that they can use another distributor or open operations here without any problems is if we don't buy from them. ... **In the case of the regular wheelchairs we can change all the business to E & J** but we have some others [sic.] products that we need to buy from them to provide service to some customers **until** E & J can have them ready for us. ... **I recommend to make one more order**. ... In this process ... **we can try to stop them through the court using the 75 law**.

32.  To which Mr. Selinger replied: "I definitely agree with your analysis on this, please go right away!" (See: *Exhibits 15 & 16*.)

33.  Plaintiffs wanted to drive Tuffcare out of the Puerto Rico market because they wanted to avoid having Tuffcare as a competitor in the Puerto Rico market and were afraid that perhaps Tuffcare would become bigger than GFE.[75]  As soon as they had available Everest & Jennings wheelchairs, they were going to compete with Tuffcare.[76]

RESPECTFULLY SUBMITTED.

Hato Rey, Puerto Rico, December 13, 2003.

/S/ Ignacio Fernandez de Lahongrais
IGNACIO FERNANDEZ DE LAHONGRAIS
USDC - PR 211603
Capital Center Sur, Suite 202
239 Avenida Arterial Hostos
Hato Rey, Puerto Rico 00918-1475
Tel. 787-758-5789 Fax 787-754-7504

Graham Field, Inc., et. al., v. E 1 Enterprises Inc., et. al., 98-1306 (DRD)      Statement of Uncontested Facts

## ENDNOTES

1. See page 268 of exhibits. *Exhibit 25. Plaintiffs' SEC Form 10-K.*

2. *Id.*

3. See page 273 of exhibits. *Exhibit 25. Plaintiffs' SEC Form 10-K.*

4. See page 275 of exhibits. *Exhibit 25. Plaintiffs' SEC Form 10-K.*

5. See page 164 of exhibits. *Exhibit 8: Transcript of deposition given by Mr. Calvin Chang, line 1.*

6. See page 247 of exhibits. *Exhibit 22. Plaintiff's response to Request of Admissions.*

7. See page 1 of exhibits. *Exhibit 1: Exclusive Sales Agreement between Tuffcare and V.C. Medical.*

8. See Exhibit 1: *Sales Agreement between Tuffcare and V.C. Medical.*

9. See page 43 of exhibits. *Exhibit 4: Transcript of deposition given by Mr. Vicente Guzman, 12/20/2001, line 16.*

10. See page 44 of exhibits. *Exhibit 4: Transcript of deposition given by Mr. Vicente Guzman, 12/20/2001, line 4.*

11. See page 45 of exhibits. *Exhibit 4: Transcript of deposition given by Mr. Vicente Guzman, 12/20/2001, line 17.*

12. *Id.*

13. See pages 191 - 192 of exhibits. *Exhibit 8: Transcript of deposition given by Mr. Calvin Chang, lines 25 - 4.*

14. See Exhibit 1: *Sales Agreement between Tuffcare and V.C. Medical.*

15. See: *Exhibit 2: Transcript of Preliminary Hearing.*

16. See page 34.1 of exhibits. *Exhibit 2: Transcript of Hearing on Request for Preliminary Injunction.*

Graham Field, Inc., et. al., v. E 1 Enterprises Inc., et. al., 98-1306 (DRD)  Statement of Uncontested Facts

17. See page 37 of exhibits. *Exhibit 3: sworn statement by Vicente Guzmán. See also: Page 11 of exhibits. Transcript of Hearing on Request for Preliminary Injunction.*

18. See page 37 of exhibits. *Exhibit 3: Sworn statement by Vicente Guzman, paragraph 7.*

19. See page 43 of exhibits. *Exhibit 4: Transcript of deposition given by Mr. Vicente Guzman, 12/20/2001, line 16.*

20. See page 44 of exhibits. *Exhibit 4: Transcript of deposition given by Mr. Vicente Guzman, 12/20/2001, line 4.*

21. See page 45 of exhibits. *Exhibit 4: Transcript of deposition given by Mr. Vicente Guzman, 12/20/2001, line 17.*

22. *Id.*

23. See page 129 of exhibits. *Exhibit 6: Transcript of deposition given by Ms Hilda Salgado, line 25.*

24. See page 156 of exhibits. *Exhibit 7: Sworn statement by Ms. Hilda Salgado, paragraph 3.*

25. See page 176 of exhibits. *Exhibit 8: Transcript of deposition given by Mr. Calvin Chang, lines 16 - 23.*

26. See page 176 of exhibits. *Exhibit 8: Transcript of deposition given by Mr. Calvin Chang, lines 16 - 23.*

27. See page 195 of exhibits. *Exhibit 9: Sworn Statement by Mr. Calvin Chang, paragraph 2.*

28. See page 176 of exhibits. *Exhibit 8: Transcript of deposition given by Mr. Calvin Chang, line 8.*

29. See page 173 of exhibits. *Exhibit 8: Transcript of deposition given by Mr. Calvin Chang, line 21.*

30. See page 195 of exhibits. *Exhibit 9: Sworn Statement by Mr. Calvin Chang, ¶ 3.*

31. See Exhibit 10.

32. See page 204 of exhibits. *Exhibit 10: Transcript of deposition given by Ms. Sara Figueroa, line 5.*

Graham Field, Inc., et. al., v. E 1 Enterprises Inc., et. al., 98-1306 (DRD)                    Statement of Uncontested Facts

33. See pages 208 - 209. *Exhibit 10: Transcript of deposition given by Ms. Sara Figueroa, lines 20 - 1*.

34. See pages 205 -206. *Exhibit 10: Transcript of deposition given by Ms. Sara Figueroa, lines 20 - 15*.

35. See page 206 of exhibits. *Exhibit 10: Transcript of deposition given by Ms. Sara Figueroa, line 9*.

36. See page 70 of exhibits. *Exhibit 5: Transcript of deposition given by Mr. Vicente Guzman, 12/27/2001, line 12*.

37. See page 37 of exhibits. *Exhibit 3: Sworn statement by Mr. Vicente Guzman, ¶ 2*.

38. See page 72 of exhibits. *Exhibit 5: Transcript of deposition given by Mr. Vicente Guzman, 12/27/2001, line 12*.

39. See page 132 of exhibits. *Exhibit 6: Transcript of deposition given by Ms Hilda Salgado, line 11*. See page 192 of exhibits. *Exhibit 8: Transcript of deposition given by Mr. Calvin Chang, line 4*.

40. See page 142 of exhibits. *Exhibit 6: Transcript of deposition given by Ms Hilda Salgado, line 18*.

41. See page 156 of exhibits. *Exhibit 7: Sworn statement by Ms. Hilda Salgado, paragraph 4*.

42. See pages 7 - 8 of exhibits. *Exhibit 2: Transcript of Hearing on Request for Preliminary Injunction, Mr. Vicente Guzman testifying, lines 19 - 3*.

43. See pages 7 & 13 -14 of exhibits. *Exhibit 2: Transcript of Hearing on Request for Preliminary Injunction, Mr. Vicente Guzman testifying, lines 15 - 22 & 24 - 11*.
See page 73 of exhibits. *Exhibit 5: Transcript of deposition given by Mr. Vicente Guzman, 12/27/2001, line 10*.

44. See page 8 of exhibits. *Exhibit 2: Transcript of Hearing on Request for Preliminary Injunction, Mr. Vicente Guzman testifying, line 1*.

45. See page 37 of exhibits. *Exhibit 3: Sworn statement by Mr. Vicente Guzman, paragraph 8*.

46. See page 228 of exhibits. *Exhibit 11: Letter of termination.*

Graham Field, Inc., et. al., v. E 1 Enterprises Inc., et. al., 98-1306 (DRD)            Statement of Uncontested Facts

47. See page 37 of exhibits. *Exhibit 3: Sworn statement by Mr. Vicente Guzman, paragraph 9*.

48. See page 35 of exhibits. *Exhibit 2: Transcript of Hearing on Request for Preliminary Injunction, Mr. Calvin Chang testifying, line 19*. (There was no longer any *agreement* between VC Medical and Tuffcare. Only a distribution *arrangement*.)

49. See page 12 of exhibits. *Exhibit 2: Transcript of Hearing on Request for Preliminary Injunction, Mr. Vicente Guzman testifying, lines 1 - 11*.
See pages 55 - 56. *Exhibit 4, transcript of deposition given by Mr. Vicente Guzman, 12/20/2001, lines 20 - 13*.

50. See page 229 of exhibits. *Exhibit 12: VC Letter of proposed assignment.*

51. See page 230 of exhibits. *Exhibit 13.*

52. See page 38 of exhibits. *Exhibit 3: Sworn statement by Mr. Vicente Guzman, paragraph 10.*
See page 83 of exhibits. *Exhibit 5: Transcript of deposition given by Mr. Vicente Guzman, 12/27/2001, line 13*.

53. See page 95 of exhibits. *Exhibit 5: Transcript of deposition given by Mr. Vicente Guzman, 12/27/2001, line 7*.

54. See page 269 of exhibits. *Graham Field's SEC Form 10-K.*

55. See page 96 of exhibits. *Exhibit 5: Transcript of deposition given by Mr. Vicente Guzman, 12/27/2001, line 8*.

56. See page 97 of exhibits. *Exhibit 5: Transcript of deposition given by Mr. Vicente Guzman, 12/27/2001, line 24*.

57. See page 177, 178 - 179 & 186 - 187 of exhibits. *Exhibit 8: Transcript of deposition given by Mr. Calvin Chang, lines 6 - 15, lines 19 - 2 & lines 24 - 7.*

58. See page 38 of exhibits. *Exhibit 3: Sworn statement by Mr. Vicente Guzman, paragraph 10.*

59. See page 38 of exhibits. *Exhibit 3: Sworn statement by Mr. Vicente Guzman, paragraph 11.*

60. See page 38 of exhibits. *Exhibit 3: Sworn statement by Mr. Vicente Guzman, paragraph 11.*

Graham Field, Inc., et. al., v. E 1 Enterprises Inc., et. al., 98-1306 (DRD)          Statement of Uncontested Facts

        See also: page 16 of exhibits. *Exhibit 2: Transcript of Hearing on Request for Preliminary Injunction, Mr. Vicente Guzman testifying, lines 5 - 14.*

61. See page 157 of exhibits. *Exhibit 7: Sworn statement given by Ms. Hilda Salgado, paragraph 8.*

62. See page 232 of exhibits. *Exhibit 15. Memo from Mr. Vicente Guzman to Mr. Irwin Selinger dated September 23, 1997. (The "smoking gun.")*

63. *Id.*

64. *Id.*

65. See pages 87 - 90, 108 - 109 & 111 - 112. *Exhibit 5: Transcript of deposition given by Mr. Vicente Guzman, 12/27/2001.*

66. See page 17 of exhibits. *Exhibit 2: Transcript of Hearing on Request for Preliminary Injunction, Mr. Vicente Guzman testifying, line 3.*

67. See pages 33 - 34 of exhibits. *Exhibit 2: Transcript of Hearing on Request for Preliminary Injunction, Mr. Vicente Guzman testifying, lines 3 - 18.*

68. See page 140 of exhibits. *Exhibit 6: Transcript of deposition given by Ms. Hilda Salgado, line 4.*

69. See page 140 of exhibits. *Exhibit 6: Transcript of deposition given by Ms. Hilda Salgado, line 11.*

70. See page 38 of exhibits. *Exhibit 3: Sworn statement by Mr. Vicente Guzman, ¶ 12.*

71. See page 235 of exhibits. Exhibit 17: Memo from Irwin Selinger to Vicente Guzman dated July 16, 1997.

72. See page 108 of exhibits. *Exhibit 5: Transcript of deposition given by Mr. Vicente Guzman, 12/27/2001, lines 1-18.*

73. See page 236 of exhibits. *Exhibit 18: Letter from Vicente Guzman to GF's Peter Wincour dated May 12, 1997.*

74. See pages 101 - 102 of exhibits. *Exhibit 5: Transcript of deposition given by Mr. Vicente Guzman, 12/27/2001, lines 12 - 1.*

75. See page 105 of exhibits. *Exhibit 5: Transcript of deposition given by Mr. Vicente Guzman, 12/27/2001, line 14.*

Graham Field, Inc., et. al., v. E 1 Enterprises Inc., et. al., 98-1306 (DRD)   Statement of Uncontested Facts

76. See page 112 of exhibits. *Exhibit 5: Transcript of deposition given by Mr. Vicente Guzman, 12/27/2001, line 1.*