THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

GRAHAM - FIELD, INC., et al.

Plaintiffs

Vs

E-1 Enterprises, Inc., et. al.,

Defendant

CIVIL NO. 98-1306 (DRD)
CIVIL ACTION

## BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT - ROBINSON PATMAN

TO THE HONORABLE COURT:

COMES NOW defendant E 1 Enterprises, Inc. ("E1"), represented by the undersigned attorney, and most respectfully STATES, ALLEGES and PRAYS:

### I. Introduction.

In 1936 Congress enacted the Robison Patman Act amendments to Section 2 of the Clayton Act. The Robinson Patman amendments were a product of the Depression and the severe economic difficulties endured by small business. It was aimed at the growing number of chain stores and their perceived threat to small independently owned stores. (See: William Anderson, *Antitrust Policy and Practice*, Lexis Nexis1999, page 1031.)

In this case, however, the alleged victim of price discrimination is more than 10 times larger than the alleged perpetrator. From the outset the reader should be skeptical of plaintiff's Robinson Patman claims.

## II. *Post* MedEx, Plaintiffs were not a Robinson Patman "purchaser."

Count I of plaintiffs' *second* amended complaint alleges a Robinson Patman violation. In Count I Plaintiffs aver that Tuffcare's discriminatory pricing practices began *after* MedEx was organized.[1] Count I did not include any allegations of price discrimination for the time period *before* MedEx was organized. MedEx was organized in November 24, 1997.[2]

Plaintiffs then argue that in the *post* MedEx time period Tuffcare engaged in discriminatory pricing against Plaintiffs for the T-2000 bed. The only item for which Plaintiffs *specifically* alleged price discrimination is the T-2000 bed.

Count I anti trust violation is then formulated as follows: Plaintiffs argue a Robinson Patman violation based on the *actual* transfer prices between Tuffcare and MedEx and the prices *quoted* to GFE.[3] They also argue a Robinson Patman violation based on Tuffcare's *refusals to sell* the T-2000 bed to GFE.[4]

Section 2(a) of the Robinson Patman Act, 15 U.S.C. § 13(a), establishes a number of

---

[1]     *After* Med Ex was set up "as a Tuffcare distributor in Puerto Rico, Tuffcare discriminated against Plaintiffs, and in favor of MedEx..." (See: ¶ 40, *Second* Amended Complaint, Docket No. 155.)

[2]     See Exhibit 26.

[3]     "...the prices that Tuffcare charged to MedEx to purchase a key Tuffcare product, a semi electric bed, called the T-2000, at little more than one-half the price that Tuffcare **quoted** to Plaintiffs for this product." (See: ¶ 41, *Second* Amended Complaint, Docket No. 155.) (Emphasis added.)

[4]     "Commencing in the last quarter of 1997, and continuing thereafter, when Plaintiffs sought to purchase this product, *i.e.*, the T 2000 semi electric bed, or other Tuffcare products, Tuffcare **refused** to sell this product, and its other products to Plaintiffs." (Italics in the original.) (Emphasis added.)

jurisdictional or threshold requirements that must be met *before* consideration of the substantive charge of competitive injury can be undertaken.  The statute requires **two or more** consummated sales in interstate commerce of commodities of like grade and quality made at discriminatory prices by the same person ("single seller") **to two or more purchasers** within the approximate time period.[5]

Stated as succinctly as possible, plaintiffs' failed to meet the two different purchasers jurisdictional requirement established by Section 2(a) because during the *post* MedEx time period there was only **one** Robinson Patman "purchaser;" MedEx.

First, Plaintiffs cannot claim that they suffered discriminatory pricing during the 1996 - 1997 time period because the purported favored buyer (i.e. MedEx) did not exist at that time.  Similarly, they cannot claim Robinson Patman damages because after 1998 they were not a Robinson Patman "purchaser."  *(Plaintiffs do not argue that they actually bought commodities from the Defendant after 12/97; the post MedEx period.  Instead, they argue that they could not or chose not to.)*

For there to be a Robinson Patman violation there must be  actual "sales to competitors at disparate prices."  Mere quotes or refusals to sell are insufficient.  Section 2(a)

---

[5]

Section 2(a) of the Robinson Patman Act, 15 U.S.C. § 13(a), provides, in pertinent part:

> It shall be unlawful for any **person** engaged in commerce, in the course of such commerce, either directly or indirectly, to discriminate in price between **different purchasers** of commodities of like grade and quality, ... and where the effect of such discrimination **may be substantially to lessens competition or tend to create a monopoly** ... [Emphasis added.]

of the Robinson Patman Act, 15 U.S.C. § 13(a), is again our starting point:

> ... *And provided further*, That nothing herein contained shall prevent persons engaged in selling goods, wares, or merchandise in commerce from selecting their own customers ... [Emphasis added.]

Section 2(a) applies only when there at least two completed sales by the same seller at different prices to different purchasers. See, e.g. Bruce's Juices, Inc. V. American Can Co., 330 U.S. 743 (1947). Thus, a mere offer of sale is not sufficient. See, e.g., Robertson's Battery Terminal, Inc. V. Pacific Chloride, Inc., 961 F.2d 1578 (6th Cir. 1992) (*Different price quotes to different parties for use in bidding did not violate the act because neither bid was chosen; thus, no "sale" occurred*).

Therefore, the initial and dispositive question on the present claim is whether Plaintiffs were the defendant's "customer" or "purchaser" within the meaning of Sections 2(a) after MedEx was created. *See e.g.* D. Baum, The Robinson-Patman Act: Summary and Comment, p. 53 et. seq. (1964).

The classic and accepted definition of the term "purchaser" (or "customer") is found in Shaw's, Inc. v. Wilson-Jones Co., 105 F.2d 331, 333 (3rd Cir. 1939), wherein the Third Circuit stated:

> The term purchaser means simply one who purchases, a buyer, a vendee. It does not mean one who seeks to purchase, a person who goes into the market-place for the purpose of purchasing. In other words, it does not mean a prospective purchaser, or one who wishes to purchase...

Plaintiffs in their complaint lay emphasis in their allegation that the defendant discriminated against it by **quoting** higher prices for the same products, offering better credit

terms to MedEx than those offered to Plaintiff had it purchased those products. (*See* ¶*'s* 39 - 42, 44 of the *Second* Amended Complaint; Docket No. 155.)

Since two completed sales are required for Robinson Patman jurisdiction, refusals to sell or to continue to sell do not constitute an actionable discrimination. See, e.g., Shaw's Inc. v. Wilson Jones Co., 105 F.2d 331 (3rd Cir. 1939). The Courts have found this limit on the reach of the Act to be required by both United States v. Colgate Co., 250 U.S. 300 (1919), which protects the right of one to unilaterally refuse to deal (the *Colgate* doctrine), and by the Section 2(a) proviso that reserves to sellers the right of "selecting their own customers in bona fide transactions and not in restraints of trade." FTC v. Simplicity Pattern Co., 360 U.S. 55, 66 (1959).

"The right to refuse to deal, the statutory embodiment of the 'Colgate Doctrine,' permeates the entire Robinson-Patman Act. One who is not a customer cannot claim the allowance or services which flow from Sections 2(d) and (e)." D. Baum, *supra* at 53.

Finally, a statement relevant to the matter at bar can be found in Naifeh v. Ronson Art Metal Works, 218 F.2d 202, 206 - 7 (10 Cir. 1954).[6]

> By the express terms of the Act, [defendant] had the right to do business with whom it pleased. As a private trader in interstate commerce, [defendant] not only could select its own customers but also could refuse to sell its merchandise to anyone and

---

[6]

See also, Colorado Pump & Supply Co. v. Febco, Inc., 472 F.2d 637, 641 (10 Cir.) cert. denied, 411 U.S. 987 (1973); New Amsterdam Cheese Corp. v. Kraftco Corp., 363 F. Supp. 135, 141-142 (S.D.N.Y. 1973); Tripoli Co. v. Wella Corp., 286 F. Supp. 264 (E.D. Pa. 1968), aff'd, 425 F.2d 932 (3 Cir.) cert. denied, 400 U.S. 831 (1970); Ben B. Schwartz & Sons, Inc. v. Sunkist Growers, Inc., 203 F. Supp. 92, 99 (E.D. Mich. 1962).

by so doing would in no way violate the anti-trust laws. It is settled law that a seller may either refuse to negotiate or may cease doing business with a customer without running afoul of the Act. . . .

The complaint does not sufficiently allege conduct on the part of the defendant which is proscribed by the Act. It merely alleges that defendant stopped doing business with plaintiff and continued to do business with others (MedEx). "And termination of one distributor in favor of another has been upheld as perfectly lawful and not in restraint of trade under the Clayton Act as amended by the Robinson-Patman Act. *New Amsterdam Cheese Corp. v. Kraftco Corp., 363 F. Supp. 135 (S.D.N.Y. 1973)*." Monroe Co. of Quincy v. American Standard, Inc., 368 F. Supp. 603, 605 (D. Mass. 1973). (See also: Jobbers Warehouse Service, Inc. v. Maremont Corp., 453 F. Supp. 840 (Mass. 1978). (*Absent a contrary agreement, a manufacturer may choose distributors at will.*))

Plaintiffs, by their own concession, did not purchase T2000 beds from defendant. Rather, Plaintiffs attempt to pull themselves up by the bootstraps to purchaser status. The reader should not be impressed. Having never been a "purchaser" or "customer" of Tuffacre since 12/97, as those terms are defined by the cases, *supra*, plaintiffs cannot become such by simply arguing that it *could* have been a "purchaser" had it been offered the same prices given to MedEx.[7]

### III. Conclusion

---

[7]*See also*, Klein v. Lionel Corp., 237 F.2d 13, 15 (3 Cir. 1956); Naifeh v. Ronson Art Metal Works, 218 F.2d 202, 206, n. 6 (10 Cir. 1954).

For the foregoing reasons, Plaintiffs have not established any discriminatory practices by Defendant. To do so, their complaint should have clearly stated what commodity they did buy, and at what price, and then compare it with sales prices granted to other "purchasers" during the same time period.

Finally, the Court should not lose sight of the fact that Graham Field and Tuffcare sold competing products in the same marketplace.[8] They were competitors. It is hard to conceive that Tuffcare's alleged actions harmed "competition" when Graham Field could substitute Tuffcare products with its own.

I HEREBY CERTIFY that, on this same date, a true copy of this document has been sent via the Court's CM/ECF system Mr. Kenneth J. Mc Culloch, BRG&S.

RESPECTFULLY SUBMITTED.

Hato Rey, Puerto Rico, December 16, 2003.

/S/ Ignacio Fernandez de Lahongrais
IGNACIO FERNANDEZ DE LAHONGRAIS
USDC - PR 211603
Capital Center Sur, Suite 202
Avenida Arterial Hostos #239
Hato Rey, Puerto Rico 00918-1475
Tel. 758-5789 Fax 754-7504

---

[8]    See Exhibit 22, Plaintiffs' Response to Defendant's First Request for Admissions, page 247.