IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| GRAHAM-FIELD, INC. AND GRAHAM FIELD EXPRESS (PUERTO RICO) INC. | * * * * |
| Plaintiffs | * * |
| v. | CIVIL NO. 98-1306(DRD) |
| TUFFCARE INCORPORATED | * * * |
| Defendant | * |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## VICENTE GUZMAN, JR.'S
## DECLARATION UNDER PENALTY OF PERJURY

**TO THIS HONORABLE COURT:**

I, Vicente Guzmán, Jr., pursuant to 28 U.S.C. §1745, provide the following declaration of facts based on my personal knowledge, under penalty of perjury:

1. I am Vicente Guzmán, Jr., of legal age, (marital status), and resident of (city), Puerto Rico. The facts set forth below are based on my personal knowledge. I have made this Declaration voluntarily for the use in the above mentioned case.

2. I was the owner of V. C. Medical Distributors, Inc. a/k/a V. C. Corporation ("VC Medical"), until September, 1996, when I sold my company to one of the Plaintiffs in the above-mentioned case, Graham-Field, Inc.

3. From the time Graham-Field, Inc. purchased VC Medical in September, 1996 to January 31,1998, I was President their new subsidiary: Graham-

36

**CIVIL NO. 98-1306(DRD)**                                                                 2

Field Express (Puerto Rico), Inc. The latter is also a Plaintiff in the above-captioned case.

4. From 1990 to September, 1996, when Graham-Field, Inc. purchased VC Medical, it was the exclusive distributor for some of Defendant Tuffcare, Inc.'s products ("Tuffcare"). The Tuffcare products sold by VC Medical were only some of its wheelchairs, canes and walkers.

5. Tuffcare products constituted approximately forty-five percent (45% of VC Medical's sales, amounting to approximately $780,000.00 for 1996.

6. VC Medical never sold Tuffcare's beds. VC also did not sell some of the heavy-duty, more expensive models of Tuffcare's wheelchairs because of their cost.

7. At the time, and until September, 1996, VC Medical's distribution contract with Tuffcare    Was of a dual exclusive nature. VC Medical did not sell competing wheelchairs, and Tuffcare did not market these same products through any other company in Puerto Rico.

8. In order for the sale to take place, Graham Field, Inc. demanded that I renegotiate VC Medical's dual exclusive distributor contract with Tuffcare, since Graham-Field, Inc. manufactures and sells competing products. Graham-Field, Inc.'s executive Richard Kolodny expressed to me that this contract could not remain in place as it would bar Graham-Field, Inc. from introducing Graham-Field's competing products in the Island.

9. Therefore, at Graham-Field, Inc.'s behest, I renegotiated the contract and Tuffcare agreed to sell the same products as before, but not on an

37

CIVIL NO. 98-1306(DRD)                                                                 3

exclusive basis. Tuffcare agreed to do business withe the new company Graham-Field Express (Puerto Rico), on a good will basis.

10. I, as President of Graham-Field Express (Puerto Rico), continued ordering the same line of products from Tuffcare on a non-exclusive basis that I had purchased when I was the owner of VC Medical.

11. Then I was ordered by Graham-Field, Inc.'s legal counsel Kolodny and by Irwin Selinger, Graham-Field, Inc.'s CEO, to decrease Graham-Field Express (Puerto Rico)'s purchases of Tuffcare products, until a short transition period brought an immersion of Graham-Fields' products into the Puerto Rico market. At that point gradually all Tuffcare purchases would cease. Miss Sara Figueroa was aware of these facts.

12. I was chastised on various occasions by Mr. Selinger as to why I was still purchasing competing products from Tuffcare, instead of only promoting Graham-Field's products. I was specifically told by Mr. Selinger: when is this business of other suppliers going to end?

13. Since I became President of Graham-Field Express (Puerto Rico) on September, 1996 until my resignation on January 31, 1998, this company was chronically late in its payment to Tuffcare. Usually it took Graham-Field Express (Puerto Rico) over ninety (90) days to pay Tuffcare's invoices when the payment terms granted by Tuffcare were only net ten (10) days. On several occassions Mr. Calvin Chang made personal request of payments because of their lateness.

CIVIL NO. 98-1306(DRD)                                                                  4

I have read the foregoing, and I declare under penalty of perjury that the foregoing is correct.

In San Juan, Puerto Rico, this 16Th day of March, 2001.

**VICENTE GUZMAN, JR**

*[signature]*

39