## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| GRAHAM-FIELD, INC. *et al.* | * |
| | * |
| **Plaintiffs** | * CIVIL NO. 98-1306 (DRD) |
| | * |
| **vs.** | * |
| | * |
| **TUFFCARE, INC.** | * |
| **Defendant** | * |

**************************************************

### HILDA SALGADO'S
### DECLARATION UNDER PENALTY OF PERJURY

**TO THIS HONORABLE COURT:**

I, Hilda Salgado, pursuant to 28 U.S.C. §1746, provide the following declaration of facts based on my personal knowledge, under penalty of perjury:

1. I am Hilda Salgado, of legal age, single, and resident of Guaynabo, Puerto Rico. The facts set forth below are based on my personal knowledge. I have made this Declaration voluntarily for the use in the above captioned case.

2. I am the General Manager for Medex, Inc since February 2, 1998. Medex is a corporation under the laws of the Commonwealth of Puerto Rico. Before working for Medex, I was the Operations Manager at Graham-Field Express (Puerto Rico) since it bought out my previous employer VC Medical Distributors ("VC"). I did not have a non-competition contract with GFE that barred me from working at any other company. Neither did the other former GFE employees that came to work with Medex.

3. While I worked with Vicente Guzmán, Jr., owner of VC, this company, VC entered into an exclusive distribution contract with Tuffcare. The exclusivity was **only** for the distribution of **wheelchairs**. The dual exclusivity agreement was that Tuffcare would only sell to VC Medical the product line of wheelchairs and VC Medical would not buy wheelchairs from any other manufacturer. VC Medical also purchased from Tuffcare canes and walkers, and related products on a non-exclusive basis. I was one of the contact persons of VC with Tuffcare.

4. While I worked at VC, VC Medical purchased and promoted beds from other manufacturers, including but not limited to Plaintiff Graham-Field, Inc. VC Medical purchased and promoted from Graham Field, Inc. the beds, bed



**156**

Hilda Salgado's Declaration Under Penalty of Perjury.
Civil No. 98-1306 (DRD)
Page no. 2

rails, patient aids and walkers, commodes, grab aids for the bathrooms, diagnostic products.

5.   While I worked at VC, Graham-Field began talks with Vicente Guzmán, Jr. to purchase VC, in order to become a wholly-owned subsidiary.  As a requirement for the sale to take place, Graham Field, Inc. demanded that Vicente Guzmán, Jr. renegotiate VC Medical's dual exclusive distributor contract with Tuffcare, since Graham-Field, Inc. manufactures and sells competing products.

6.   When VC Medical was bought by Graham-Field, Inc. it became a wholly-owned subsidiary: Graham-Field Express (Puerto Rico), Inc. ("GFE"). Vicente Guzmán, Jr. became its first President until he left the company on January, 31, 1998. I became its Operations Manager until my resignation on December, 1997.   Vicente Guzmán, Jr., as President of GFE, tried to continue ordering the same line of products from Tuffcare on a non-exclusive basis that he had purchased when he was the owner of VC Medical, but was expressly told not to do so.

7.   To the best of my knowledge, With the exception of GFE (Puerto Rico), no other GF subsidiary in the world has bought or buys products from Tuffcare. All of Tuffcare products compete directly with GF's own product lines.  At all relevant times, GF has manufactured competing wheelchairs under the Cetylcide, Metro, and Everest and Jennings brands.   At all relevant times, GF has manufactured competing beds under the Smith and Davis, Lumex and Caregiver 300 Series brands.

8.   While I was working at GFE, we followed Graham-Field, Inc.'s orders that it cannot promote a competing product such as Tuffcare wheelchairs.  During that time GFE only bought Tuffcare products during a transitional period and only as back-up, which brought the sales below the contractual minimum in the assigned distribution agreement; and it violated the net 10 day payment agreement, by paying Tuffcare invoices very late.

9.   While I was still at GFE, and due to its chronic tardiness of 60 up to 120 days for payment of pending invoices during, I learned that Tuffcare gave GFE a short term to pay all pending invoices or it will consider terminated the non-exclusive distribution agreement, assigned previously by VC Medical to GFE, for the distribution of Tuffcare wheelchairs.  When Tuffcare did not receive the expected response to said letter, as stated, Tuffcare canceled all pending orders.



**157**

Hilda Salgado's Declaration Under Penalty of Perjury.
Civil No. 98-1306 (DRD)
Page no. 3

10.  I have vast experience in the medical supplies field and prices in the industry are usually divided in two areas: (a) distributor's prices, who buy in large quantities to a manufacturer and sell to smaller dealers and hospitals or institutions and (b) dealer prices, who usually buy from distributors in smaller quantities at a time.  Pricing is divided in "levels" or "tiers", and vary depending on the quantity purchased by either the distributor or the dealer. It is a different price structure for different quantities. This method is used by Tuffcare and Graham-Field, Inc. as well as Medex and GFE.  Usually manufacturers will sell a product to distributor with three levels of prices: $ X if purchasing 1-99; $ Y (lower), if purchasing 100-499: and $ Z (lowest), if purchasing 500 units or more. Dealer levels vary substantially more and can be divided in groups of five, ten or more. Ultimately, the more units a client buys of certain products, the higher the discount.  The terms of payment, (C.O.D., net 10 days, net 30 days, etc.) will affect the client's prices.

11.  Although most distributors cannot stock and pay 500+ units at one time, distributors may still take advantage of the lowest price available by placing what are called "blanket orders".   If a company intends to buy more than the minimum for the lowest price available  during the course of one year, it places a "blanket" or standing" order with the manufacturer. This system also benefits the manufacturers so that the factory can schedule its production of units to be shipped accordingly.

12.  As the person who places all orders, regular or "blanket", I can attest that in the year 2000 alone, Medex had a "blanket" or "standing" order for 3,000 units of the T2000 beds. Then I controlled the timing of delivery to make sure there is enough space in the warehouse to receive the beds.  Since distributors can take advantage from a better price in the middle of the year, Medex benefitted from a reduction in price given to any distributor that placed an order of 500+ of T2000 beds.

13.  Never has Calvin Chang or anyone from Medex ordered me to "beat" a price or "camouflage" a price in a promotion.  At time, I have been advised to **match** the competition's prices.  All companies, including Tuffcare and Graham-Field, Medex and GFE, from time to time have special promotions. Sometimes the promotion is used to introduce a new product in the market and sometimes it is to the contrary: to sell old inventory.


I have read the foregoing, and I declare under penalty of perjury that the foregoing is correct.

**158**

Hilda Salgado's Declaration Under Penalty of Perjury.
Civil No. 98-1306 (DRD)
Page no. 4

In San Juan, Puerto Rico, this 20th day of March, 2001

HILDA SALGADO