EXHIBIT -5-

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★   OCT 30 2002   ★
10/31/02

LONG ISLAND OFFICE

JRC:JMM:mv/jmm
F. #2000R01575
GF Indict.wpd

HURLEY, J!
WALL, M.J.

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - -X

UNITED STATES OF AMERICA

    - against -

IRWIN SELINGER and
MARC CHAPMAN,

              Defendants.

- - - - - - - - - - - - - - - - - - - -X

I N D I C T M E N T

Cr. No. **CR 02 1274**

(T. 18, U.S.C., §§ 371, 2
and 3551 et seq.; T. 15,
U.S.C., §§ 78j(b) and 78ff))

THE GRAND JURY CHARGES:

### INTRODUCTION

At all times relevant to this Indictment:

1.   Graham-Field Health Products, Inc., ("Graham-Field") was a corporation that manufactured and distributed medical, dental and general healthcare products and equipment in markets throughout North America, Europe, Central America, South America and Asia. Graham-Field's principal executive office was located at 400 Rabro Drive East, Hauppauge, New York.

2.   Graham-Field's common stock traded on the New York Stock Exchange, which is a national securities market that uses computers, telephones and other instruments of communication in interstate commerce and the mails in order to effectuate purchases and sales of securities.

1

251

3.    The defendant IRWIN SELINGER was Chief Executive Officer and President of Graham-Field.

4.    The defendant MARC CHAPMAN was an independent distributor of medical products doing business as Bon Jon Medical Supplies ("Bon Jon").

5.    The United States Securities and Exchange Commission ("SEC") is an independent agency of the United States government, charged with the duty of regulating and monitoring the trading of securities within the United States.

6.    As a publicly-traded corporation, Graham-Field was required to file with the SEC Form 10-Q reports, and therein accurately disclose the corporation's net income, annual revenues, and other information concerning the company's financial health during the first three quarters of the fiscal year.

<u>COUNT ONE</u>
(Conspiracy to Commit Securities Fraud)

7.    The allegations contained in paragraphs 1 through 6 are hereby realleged and incorporated as if fully set forth herein.

8.    On or about and between October 23, 1997 and December 30, 1997, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants IRWIN SELINGER and MARC CHAPMAN, together with others, did knowingly and willfully conspire directly and indirectly, to use and employ manipulative and deceptive devices and contrivances in contravention of Rule 10b-5 of the Rules and Regulations of the

**252**

United States Securities and Exchange Commission (Title 17, Code of Federal Regulations, Section 240.10b-5), in that the defendants, together with others, did knowingly and willfully conspire directly and indirectly to (a) employ devices, schemes, and artifices to defraud; (b) make untrue statements of material fact and omit to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and (c) engage in acts, practices, and courses of business which would and did operate as a fraud and deceit upon members of the investing public, in connection with purchases and sales of securities in Graham-Field and by use of instruments of communication in interstate commerce and the mails, in violation of Title 15, United States Code, Sections 78j(b) and 78ff.

9. It was part of the conspiracy that the defendant IRWIN SELINGER, together with others, caused Graham-Field to acquire a Delaware corporation named Fuqua Enterprises, Inc., under the terms of a merger agreement by which Graham-Field would exchange 2.1 shares of its stock for each outstanding share of Fuqua common stock. Under the merger agreement, Graham-Field was required to issue additional shares of stock for each share of Fuqua if Graham-Field's average stock price fell below a certain target price before the closing date of the merger. Likewise, Graham-Field could issue fewer shares in exchange for Fuqua stock if Graham-Field's average stock price exceeded a certain target

**253**

price before the closing date of the merger.

10. It was further a part of the conspiracy that to fraudulently inflate Graham-Field's earnings and thereby inflate Graham-Field's average share price prior to the Fuqua merger closing, the defendants IRWIN SELINGER and MARC CHAPMAN created false documents to make it appear as though Bon Jon had paid a monthly marketing fee to Graham-Field, when in fact no such agreement existed and no such fees were ever paid.

11. It was further a part of the conspiracy that the defendants IRWIN SELINGER and MARC CHAPMAN caused the falsely inflated income to be reported in Graham-Field's SEC Form 10-Q for the quarter ended September 30, 1997, thereby supporting Graham-Field's average stock price prior to the closing of the Fuqua merger.

12. It was further a part of the conspiracy that the defendants IRWIN SELINGER and MARC CHAPMAN fraudulently created records purporting to extend a $700,000 credit to Graham-Field, when in fact no such credit existed.

13. In furtherance of the conspiracy and to effect the objectives thereof, within the Eastern District of New York and elsewhere, the defendants IRWIN SELINGER and MARC CHAPMAN, together with others, did commit and cause to be committed the following overt acts, among others:

**254**

## OVERT ACTS

a.    On or about October 23, 1997, the defendant IRWIN SELINGER, while at the Graham-Field executive office, directed John Doe 1, whose identity is known to the Grand Jury, to obtain written documents from the defendant MARC CHAPMAN pertaining to Bon Jon's marketing fee arrangement with Graham-Field.

b.    On or about October 23, 1997, the defendant MARC CHAPMAN created a letter backdated to December 20, 1996, purportedly memorializing Bon Jon's agreement to pay Graham-Field a $50,000 monthly marketing fee.

c.    On or about October 23, 1997, the defendant MARC CHAPMAN sent a letter to an officer of Graham-Field regarding the the Bon Jon marketing fee agreement.

d.    On or about November 11, 1997, the defendant IRWIN SELINGER had a telephone conversation with the defendant MARC CHAPMAN.

e. On or about November 11, 1997, the defendant MARC CHAPMAN signed a fraudulent letter purporting to extend a $700,000 credit to Graham-Field.

f.    On or about November 13, 1997, the defendant IRWIN SALINGER caused Graham-Field's Form 10-Q quarterly report for the quarter ended September 30, 1997, to be electronically filed with the SEC in Washington, D.C.

255

g.    On or about December 30, 1997, the defendant IRWIN SALINGER caused the closing of Graham-Field's merger and acquisition of Fuqua.

(Title 18, United States Code, Sections 371 and 3551 <u>et</u> <u>seq</u>.)

COUNT TWO
(Securities Fraud)

14.    The allegations contained in paragraphs 1 through 6 and 9 through 13 are hereby realleged and incorporated as if fully set forth herein.

15.    On or about and between October 23, 1997 and December 30, 1997, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants IRWIN SELINGER and MARC CHAPMAN and others did knowingly and willfully use and employ manipulative and deceptive devices and contrivances in violation of Rule 10b-5 (17 C.F.R. Section 240.10b-5) of the rules and regulations promulgated by the SEC, in that they did, directly and indirectly: (a) employ devices, schemes and artifices to defraud; (b) make untrue statements of material fact and omit to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and (c) engage in acts, practices, and courses of business which would and did operate as a fraud and deceit upon members of the investing public, in connection with purchases and sales of securities of Graham-Field, by use of

6

**256**

instruments of communication in interstate commerce and the mails.

(Title 15, United States Code, Section 78j(b) and 78ff;

Title 18, United States Code, Sections 2 and 3551 et seq.)

A TRUE BILL

_____
FOREPERSON

_____
ROSLYNN R. MAUSKOPF
UNITED STATES ATTORNEY
EASTERN DISTRICT OF NEW YORK

BY:_____
ACTING UNITED STATES ATTORNEY
PURSUANT TO 28 C.F.R. C.131

**257**

No.    R

# UNITED STATES DISTRICT COURT

EASTERN *District of* NEW YORK

CRIMINAL *Division*

## THE UNITED STATES OF AMERICA

*vs.*

IRWIN SELINGER and
MARC CHAPMAN

Defendant.

# INDICTMENT

(T. 18, U.S.C., §§371, 2 and 3551 et seq.;
T. 15, U.S.C., §§ 78(j)(b) and 78ff))

*A true bill.*

_____
*Foreman*

*Filed in open court this* _____ *day,*

*of* _____ A.D. 19 _____

_____
*Clerk*

*Bail, $* _____

*AUSA JAMES MISKIEWICZ (631)715-7841*

**INFORMATION SHEET**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★    OCT 3 0 2002    ★

LONG ISLAND OFFICE

1.  Title of Case:  United States v. IRWIN SELINGER and MARC CHAPMAN

2.  Related Magistrate Docket Number(s) _____  _____

    _____  None ( )

**CR 02 1274**

3.  Arrest Date: _____ N/A _____

**HURLEY, J.**

4.  Nature of offense(s):  x  Felony
                          ☐  Misdemeanor

**WALL, M.J.**

5.  Related Cases - Title and Docket No(s).  (Pursuant to Rule 50.3 of the
    Local E.D.N.Y. Division of Business Rules): _____ N/A _____

    _____

    _____

6.  Projected Length of Trial:    Less than 6 weeks    ( X )
                                  More than 6 weeks    ( )

7.  County in which crime was allegedly committed: Suffolk and elsewhere _____
    (Pursuant to Rule 50.1(d) of the Local E.D.N.Y. Division of Business Rules)

8.  Has this indictment/information been ordered sealed?    (X) Yes  ( ) No

9.  Have arrest warrants been ordered?    (X) Yes  ( ) No

ROSLYNN R. MAUSKOPF
UNITED STATES ATTORNEY

By: _____
JAMES MISKIEWICZ
Assistant U.S. Attorney
631-715-7841

Rev. 3/22/01

**259**